**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MICHAEL G. DOMBROWSKI**, | ) | Case No.:  16-81412-CRJ-11 |
| SSN: xxx-xx-4413 | ) | |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

# DEBTOR'S PLAN OF REORGANIZATION

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL  35804
Tel: (256) 512-9924
Fax: (256) 512-9837

**Attorneys for Debtor in Possession**

**Dated:  November 15, 2016**

1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **MICHAEL G. DOMBROWSKI**, | ) | Case No.:  16-81412-CRJ-11 |
| SSN: xxx-xx-4413 | ) | |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## DEBTOR'S PLAN OF REORGANIZATION

Michael G. Dombrowski (the "Debtor"), as Debtor and Debtor-in-possession, proposes this Plan of Reorganization (the "Plan") pursuant to section 1121(a) of Title 11 of the United States Code for the resolution of the Debtor's outstanding creditor claims and equity interests. Reference is made to the Debtor's Disclosure Statement (the "Disclosure Statement") for a discussion of the Debtor's history, business, properties and results of operations, and for a summary of this Plan and certain related matters.

All holders of Claims and Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of this Plan.

## ARTICLE 1
## DEFINITIONS

As used herein, the following terms have the respective meanings specified below, and such meanings shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder" and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any capitalized term used but not defined herein shall have the meaning ascribed to such term in the Bankruptcy Code. In addition to such other terms as are defined in other sections of the Plan, the following capitalized terms have the following meanings when used in the Plan.

1.1    "Administrative Claim" means a Claim for costs and expenses of administration

allowed under section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Bankruptcy Code.

      1.2    "Allowed Claim" means a Claim that is (a) not a Disputed Claim or (b) a Claim that has been allowed by a Final Order.

      1.3    "Ballots" means the written Ballots for acceptance or rejection of the Plan.

      1.4    "Bankruptcy Code" or "Code" means Title 11 of the United States Code as now in effect or hereafter amended.

      1.5    "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, which presides over this proceeding, or if necessary, the United States District Court for said District having original jurisdiction over this case.

      1.6    "Bankruptcy Rules" means, collectively (a) the Federal Rules of Bankruptcy Procedure, and (b) the local rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

      1.7    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

      1.8    "Cash" means cash, wire transfer, certified check, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, and commercial paper of any Person, including interests accrued or earned thereon, or a check from the Debtor.

      1.9    "Claim" means any right to payment from the Debtor arising before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor prior to the Confirmation Date, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured or unsecured.

      1.10    "Class" means one of the classes of Claims or Interests defined in Article III hereof.

      1.11    "Confirmation" means the entry of a Confirmation Order confirming this Plan at or after a hearing pursuant to section 1129 of the Bankruptcy Code.

      1.12    "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.13    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.14    "Debtor" means Michael G. Dombrowski.

1.15    "Disclosure Statement" means the Disclosure Statement filed by the Debtor as approved by the Bankruptcy Court for submission to the Creditors, interest holders, and parties-in-interest of the Debtor, as it may have been amended or supplemented from time to time.

1.16    "Disputed Claim" means a Claim as to which a proof of claim has been Filed or deemed Filed under applicable law, as to which an objection has been or may be timely Filed and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered a Disputed Claim to the extent that: (i) the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in their respective Schedules to the extent of such excess; (ii) any corresponding Claim listed by the Debtor in their respective Schedules has been scheduled as disputed, contingent, or unliquidated, irrespective of the amount scheduled; or (iii) no corresponding Claim has been listed by the Debtor in their respective Schedules. Disputed Claims also includes Claims subject to a pending action for equitable subordination of such Claims.

1.17    "Distributions" means the properties or interests in property to be paid or distributed hereunder to the holders of Allowed Claims.

1.18    "Docket" means the docket in the Reorganization Case maintained by the Clerk.

1.19    "Effective Date" means the twentieth (20th) business day after an Order confirming this Plan becomes final and no longer open for appeal, stay or reconsideration in accordance with the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Appellate Procedure or the first business day of the next calendar month, whichever is later.

1.20    "Estate" means the estate created in this Reorganization Case under section 541 of the Bankruptcy Code.

1.21    "Executory Contract" means any unexpired lease and/or executory contract as set forth in section 365 of the Code.

1.22    "File" or "Filed" means filed with the Bankruptcy Court in the Reorganization Case.

1.23    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the Docket in the Reorganization Case, which has not been reversed, stayed, modified or amended.

4

1.24     "Impaired" as to a Class means the Plan alters the legal, equitable or contractual rights of a Claim or Interest holder within the meaning of 11 U.S.C. § 1124.

1.25     "Order" means an order or judgment of the Bankruptcy Court as entered on the Docket.

1.26     "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, indenture trustee, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code).

1.27     "Petition Date" means October 29, 2015, the date on which Debtor filed the voluntary Chapter 11 petition.

1.28     "Plan" means this Plan of Reorganization in its present form, or as it may be amended, modified, and/or supplemented from time to time in accordance with the Bankruptcy Code, or by agreement of all affected parties, or by order of the Bankruptcy Court, as the case may be.

1.29     "Pre-Petition Tax Claim" means a Tax Claim that arises prior to the Petition Date.

1.30     "Priority Claim" means all Claims entitled to priority under 11 U.S.C. §§ 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Tax Claim.

1.31     "Pro Rata" means proportionately, based on the percentage of the distribution made on account of a particular Allowed Claim bears to the distributions made on account of all Allowed Claims of the Class in which the Allowed Claim is included.

1.32     "Rejection Claim" means a Claim resulting from the rejection of a lease or executory contract by the Debtor.

1.33     "Reorganization Case" means, collectively, the Debtor's case under Chapter 11 of the Bankruptcy Code that was commenced on the Petition Date.

1.34     "Schedules" means the Schedules of Assets and Liabilities, Statement of Financial Affairs and Statement of Executory Contracts that may be filed by the Debtor with the Bankruptcy Court, as amended or supplemented on or before the Confirmation Date, listing the liabilities and assets of the Debtor.

1.35     "Secured Claim" means any Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.36     "Security Agreement" means the documentation under which a lien against property is reflected.

1.37　"Tax Claim" means either (a) an Unsecured Allowed Claim of a governmental entity as provided by section 507(a)(8) of the Code, or (b) an Allowed Claim of a governmental entity secured by a lien on property of the Debtor under applicable state law.

1.38　"Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, Pre-Petition Tax Claim or Secured Claim.

**ARTICLE 2**
**TREATMENT OF**
**ADMINISTRATIVE EXPENSE CLAIMS**
**AND PRIORITY TAX CLAIMS**

**2.1　Administrative Expense Claims.**

Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Debtor obligated for the payment of such Allowed Administrative Expense Claim in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

**2.2　Professional Compensation and Reimbursement Claims.**

Other than a professional retained by the Debtor pursuant to the Ordinary Course Professional Order, any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtor and the Creditors' Committee through and including the Effective Date under Section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in Cash in the amounts Allowed upon (i) the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim. The Debtor is authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtor and the Creditors' Committee after the Effective Date in the ordinary course and without Bankruptcy Court approval.

### 2.3 Priority Tax Claims.

This category includes the filed claim of Internal Revenue Service (4-1) and any potential claim of Alabama Department of Revenue. The Debtor is working on tax returns for 2014 and 2015 and expects that assessment of these returns by the tax authorities will reveal that the Debtor does not owe any federal or state income taxes.

This category also includes all pre-petition ad valorem tax liens on real properties which the Plan proposes that the Debtor will transfer ownership from the Debtor's various LLCs to the Debtor upon confirmation. A list of the real estate tax claims is set out below.

| Entity Owing | Creditor Address | Balance Owed |
|---|---|---|
| Blue Mountain Properties | Sevier County Trustee 125 Court Avenue, Room 212W Sevierville, TN 37862 | Included in claim No. 15-1 |
| East Coast Properties | Fulton County Tax Commissioner 141 Pryor St Atlanta GA, 30303 | Claim No. 5-1 $18,068.05 |
| MCA Properties | Fulton County Tax Commissioner 141 Pryor St. Atlanta GA, 30303 | Included in Claim No. 5-1 |
| MGD RR3 | Sevier County Trustee 125 Court Avenue, Room 212W Sevierville, TN 37862 | Claim No. 15-1 $21,632.00 |
| Michael Dombrowski | Baldwin County Revenue Commission P O Box 1389 1705 U.S. Hwy 31 S. Bay Minette, AL 36507 | Claim No. 3-1 $2,940.00 |
| Michael Dombrowski | Fulton County Tax Commissioner 141 Pryor St Atlanta GA, 30303 | Included in Claim No. 5-1 |
| East Coast Properties | Douglas County Tax Commissioner PO Box 1177 Douglasville, GA 30133 | Claim No.35-1 $403.76 |
| **Total** | | **$43,043.81** |

Beginning sixty (60) days after the Court approves the Plan, the Debtor will make a payment of $500.00 per month to the real estate tax creditors (divided *pro rata* among the claimants) until one-hundred percent (100%) of ad valorem claims are paid in full. The outstanding balances of any tax liens on real properties sold by the Debtor during this period will be paid at closing. Payment of these tax claims will include all statutory interest pursuant to 11 U.S.C. § 511, but any penalties will be discharged and unenforceable.

7

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive from one or more of the Debtors obligated for the payment of such Allowed Priority Tax Claim, and at the sole option of such Debtor(s), (i) Cash in an amount equal to the Allowed amount of such Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (ii) equal Cash payments to be made initially on the Effective Date or as soon thereafter as practicable and monthly thereafter in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate determined under applicable non-bankruptcy law, over a period from the Effective Date through the fifth (5th) anniversary after the Commencement Date; *provided*, *however*, that such election shall be without prejudice to the Debtor's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.

Any Allowed Priority Tax Claim in this case, including any priority claim of the United States (IRS), shall not be discharged upon confirmation, and shall be discharged only upon payment in full in accordance with the confirmed plan. For tax periods listed in an Allowed Priority Tax Claim of IRS, the time periods found in 26 U.S.C. § 6503(b) are tolled during the term of repayment as stated in the plan as confirmed.

In the event Debtor fails to remit payment on the unsecured priority portion and the general unsecured claim as each payment becomes due as set forth herein, or fails to file any post-petition federal tax payment as it becomes due, the automatic stay shall be terminated without further Order of the Court and the holder of an Allowed Priority Tax Claim shall be free to proceed with its legal and/or administrative remedies to collect any and all federal tax indebtedness of the Debtor.

Confirmation of this Plan will in no way release or absolve any individual responsible parties from their liability for any Allowed Priority Tax Claim against the Debtor.

## ARTICLE 3
## DESIGNATION OF
## CLAIMS AND INTERESTS

3.1     The following is a designation of the twenty (20) classes of Claims and Interests under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Claims that are not impaired have been noted and will not vote on the Plan.

| Class Numbers | Class Descriptions | Voting Rights |
|---|---|---|
| 1 – 14 | "Single-Property Note" Mortgages Treated as Secured Claims | Impaired and may vote |
| 15-20 | "Multiple-Properties Note" Mortgages Treated as Secured Claims | Impaired and may vote |
| 21 | Home Owner Association Liens Treated as Secured Claims | Impaired and may vote |
| 22 | General Unsecured Claims | Impaired and may vote |

A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other class or classes. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim or Interest which is not an Allowed Claim or Interest is not in any Class.

Notwithstanding anything to the contrary contained in this Plan, no distribution shall be made on account of any Claim or Interest that is not an Allowed Claim.

Provided that all Claims will have been paid to the extent provided for in this Plan, the Debtor will retain his Assets, subject to all remaining perfected encumbrances, as well as any remainder of the Estate not otherwise liquidated.

**ARTICLE 4**
**CLASSIFICATION AND TREATMENT**
**OF CLAIMS AND INTERESTS**

**Classes of "Single-Property Note" Mortgages**
**Treated as Secured Claims: 1 through 14**

**1. Classification**

This Class consists of all real property that is subject to a "single-property" mortgage and that either the Debtor already owns or the Plan proposes that the Debtor will transfer ownership from the Debtor's various LLCs to the Debtor upon confirmation.

**2. Claimant Status**

All claims in Classes 1 through 14 are impaired and, accordingly, the holders of Allowed Claims in such Classes are entitled to vote on the Plan.

**3. Treatment**

For each secured claim listed below, the Plan proposes monthly payments of the allowed claim based on a thirty (30) year amortization, except in those cases where the creditor has agreed to accept a forty (40) year amortization.

For each secured claim listed below, the proposed Plan interest rate has been determined as follows:

a. If the contract interest rate was higher than 4.500% per annum, the Plan proposes an interest rate of 4.50% based on the formula discussed in the U.S. Supreme Court decision of *Till v. SCS Credit*, 540 U.S. 1014, 124 S. CT. 1951 (2004) – the Prime Interest Rate

9

(currently 3.50%) plus 1.00% for the relatively low risk of default for an over-secured claim on real estate; or

b.  If the contract interest rate was equal to or lower than 4.500% and the Debtor and the creditors do not have an agreement to lower the rate, the Plan proposes maintaining or reinstating the contract interest rate; or

c.  If the Debtor and the Creditor have an agreement to lower the rate below 4.500%, the Plan proposes the new agreed interest rate.

The Bankruptcy Court has effectively established an applicable interest rate for some secured claims by ordering adequate protection payments by the Debtor during this Chapter 11 case. As to every secured claim in this category for which adequate protection has not been established, the balance of said claim as of confirmation of this Plan shall be calculated using the proposed interest rate set out below for the period from the petition Filing Date to the date of confirmation.

| Creditor Class | Lender or Lienholder | Property Description | Current Int. Rate | Proposed Plan Treatment | Estimated Payment |
|---|---|---|---|---|---|
| 1 | Bank of America x-0216 Claim No. 18-1 | Rental Home: 3565 Hemlock Oxnard, CA 93035 | 4.00% | Set interest to 3.875% and term to 40 years, based on proposal by FNMA. | $984.27 |
| 2 | Bank of America x-2790 Claim No. 17-1 | Rental Home: 549 E Port Hueneme Port Hueneme, CA 93041 | 4.00% | Set interest to 3.875% and term to 40 years, based on proposal by FNMA. | $1093.88 |
| 3 | Seterus x-8496 Claim No. 22-1 | Debtor's Home: 200 Walker Ave Huntsville, AL 35801 | 3.875% | Maintain contract interest rate, and set term to 40 years, based on proposal by FNMA. | $1,555.40 |
| 4 | Seterus x-8248 Claim No 30-1 | Rental Home: 3422 Los Mochis Oceanside, CA 92056 | 4.00% | Set interest to 3.875% and term to 40 years, based on proposal by FNMA. Debtor will liquidate within 12 months. | $318.38 |
| 5 | Seterus x-2474 Claim No. 20-1 | Rental Home: 1701 Strand, Unit 8 Tybee Island GA 31328 | 6.25% | Set interest to 3.875% and term to 40 years, based on proposal by FNMA. | $1529.65 |

| | | | | | |
|---|---|---|---|---|---|
| 6 | Seterus x-7397 Claim No. 21-1 | Rental Home: 2520 Bangor CT Snellville, GA 30078 | 4.5% | Set interest to 3.875% and term to 40 years, based on proposal by FNMA. | $811.64 |
| 7 | Seterus x-2564 Claim No. 33-1 | Rental Home: 2564 Navarra Dr #115 Carlsbad CA 92009 | 4.00% | Set interest to 3.875% and term to 40 years, based on proposal by FNMA. Debtor will liquidate within 12 months. | $645.38 |
| 8 | Seterus x-1860 Claim No. 29-1 | Rental Home: 3621 Ketch Oxnard, CA 93035 | 4.125% | Set interest to 3.875% and term to 40 years, based on proposal by FNMA. Debtor will liquidate within 24 months. | $983.19 |
| 9 | Cornerston ex-1573 Claim No. 13-1 | 1 BR Rental Condo: 75 Ponce de Leon Ave NE #1006  Atlanta, GA 30303 | 6.00% | Set interest to 4.5% and payment amortization to 30 years. Balloon payment in 10 years.Debtor will Liquidate within 24 months. | $243.21 |
| 10 | Cornerston ex-6938 Claim No. 12-1 | 3 BR Rental Condo: 1415 Butler Aver Unit 19 Tybee Island GA 31328 | 4.00% | Maintain contract interest rate, and set payment amortization to 30 years. Liquidate within 12 months. | $810.68 |
| 11 | Cornerston ex-5684 Claim No. 11-1 | 3 BR Rental Condo: 1415 Butler Aver Unit 16 Tybee Island GA 31328 | 3.50% | Maintain contract interest rate, and set payment amortization to 30 years. Balloon payment in 10 years. | $785.83 |
| 12 | Progress x-2300 | 3 BR Vacant Home 503/505 O'Shaughness y Huntsville, AL, 35801 | 5.00% | Set interest rate to 4.50% and payment amortization to 30 years. Liquidate within 24 months. | $405.80 |

| 13 | Progress x-6800 | 4 BR Vacant Home 1200 Highlands Huntsville, AL, 35801 | 5.00% | Set interest rate to 4.50% and payment amortization to 30 years. Liquidate within 24 months. | $787.74 |
|---|---|---|---|---|---|
| 14 | Progress x-6700 | 4 BR Vacant Home 405 Eustis Huntsville, AL 35801 | 5.00% | Set interest rate to 4.50% and payment amortization to 30 years. Liquidate within 24 months. | $1,142.14 |

**Classes of "Multiple-Properties Note" Mortgages
Treated as Secured Claims: 15 through 20**

**1. Classification**

This Class consists of all real property that is subject to a "multiple-properties" mortgage and that either the Debtor already owns or the Plan proposes that the Debtor will transfer ownership from the Debtor's various LLCs to the Debtor upon confirmation.

**2. Claimant Status**

All claims in Classes 15 through 20 are impaired and, accordingly, the holders of Allowed Claims in such Classes are entitled to vote on the Plan.

**3. Treatment**

For each secured claim listed below, the Plan proposes monthly payments of the allowed claim based on a thirty (30) year amortization, with a balloon payment of the entire remaining debt in ten (10) years (on the 120th regular monthly payment). This balloon period is chosen to facilitate Debtor repairing his credit prior to refinancing efforts.

**1. Interest Rate.**

The proposed Plan interest rate for each allowed secured claim listed below has been determined as follows:

1. If the contract interest rate was higher than 4.500% per annum, the Plan proposes an interest rate of 4.50% based on the formula discussed in the U.S. Supreme Court decision of *Till v. SCS Credit*, 540 U.S. 1014, 124 S. CT. 1951 (2004) – the Prime Interest Rate (currently 3.50%) plus 1.00% for the relatively low risk of default for an over-secured claim on real estate; or

2. If the contract interest rate was equal to, or lower than 4.500%, and the Debtor and the creditors do not have an agreement to lower the rate, the Plan proposes maintaining or reinstating the contract interest rate.

As to every secured claim in this category the balance of said claim as of confirmation of this Plan shall be calculated using the proposed interest rate set out below for the period from the petition Filing Date to the date of confirmation.

| Creditor Class | Lender or Lienholder | Property Description | Current Int. Rate | Proposed Plan Treatment | Estimated Payment |
|---|---|---|---|---|---|
| 15 | United Community Bank x-1827 Claim No. 2-1 | 12 Vacant Lots Lakeland Estates Ellijay, Georgia | 3.99% | Maintain contract interest rate and reset payment amortization to 30 years. Pay claim within 24 months. | $748.64 |
| 16 | Progress Bank and Trust x-2700 | 21 Rental Homes and 1 Vacant Lot Located in Madison County, Alabama | 4.5% | Maintain contract interest rate and set payment amortization to 30 years. Balloon payment in 10 years. | $4689.37 |
| 17 | Piedmont Capital Lending Claim No. 8-1 | 9 Vacant Lots and 2 Rental Homes in North Georgia | 12.00% | Set interest to 4.5% and payment amortization to 30 years. Balloon payment in 10 years. | $1043.77 |
| 18 | Sevier County Bank x-7420 | 4 Rental Home: in Sevier County, TN | 3.5% | Maintain contract interest rate and reset amortization of 30 years. Balloon payment in 10 years. | $3534.82 |
| 18 | Sevier County Bank x-7457 | 6 Rental Home: in Sevier County, TN | 3.5% | Maintain contract interest rate and reset amortization of 30 years. Balloon payment in 10 years. | $5781.61 |
| 19 | First Tennessee Bank Claim No. 16-1 | 7 Rental Homes in Sevierville, TN 37876 | 3.5% | Reinstate contract interest rate of 3.5%, and amortization of 30 years. Balloon payment in 10 years. | $4198.57 |

13

| | | | | | |
|---|---|---|---|---|---|
| 20 | Synovus (First Comm. Bank) x-8396 Claim No. 10-1 | 47 Lots and 3 Residential Homes in Georgia and Alabama | 4.75% | Set interest to 4.50% and payment to pre-confirmation payment. Pay claim within 24 months. | $995.00 |

## 2. Liquidation of Collateral.

In addition to making monthly payments to allowed claims in class, the Plan contemplates timed liquidation by the Debtor of selective collateral real properties in order to both accelerate payment of claims and to fund plan expenses. In order to facilitate the sale or refinance of collateral the following maximum release prices are proposed for each piece of collateral. The release price of collateral will be the lesser of the remaining claim or the release price listed for that collateral. Debtor may also choose to use cash on hand to payoff and release selected collateral. Each time collateral is released, the monthly payment will be reduced proportional to the reduction in principal balance.

Once an allowed claim is paid in full, the Debtor will keep any remaining, unsold properties, and the Creditor will release said remaining properties. The Creditor shall cooperate fully with the sale or refinancing of its collateral, including providing the appropriate mortgage release for the closing.

## A. Class 15 - United Community Bank Release Agreement.

The following release schedule applies to the 12 vacant lots collateralizing Claim No. 2-1 by United Community Bank. This claim may be identified as United Community Bank, Loan x-1827 elsewhere in Debtor's bankruptcy proceedings. Collateral for Class 15 is not income producing, but it lies within a market that is appreciating. Debtor intends to list all lots for sale within 90 days of plan confirmation. The market in Ellijay, which is located roughly 60 miles north of metro Atlanta, is recovering from a low in 2012, but the area has not recovered as quickly as metropolitan Atlanta. Debtor plans to satisfy Claim 2-1 within 24 months through sale of property.

| Property Description | Market Value | Estimated Balance | Estimated LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| Lot 2 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-050 | $20,000 | $7,040.36 | 35% | $9,000.00 | $33.57 |
| Lot 10 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-047 | $30,000 | $10,560.54 | 35% | $12,000.00 | $50.36 |
| Lot 14 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-041 | $40,000 | $14,080.72 | 35% | $16,000.00 | $67.14 |

| Property Description | Market Value | Estimated Balance | Estimated LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| Lot 51 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-061 | $30,000 | $10,560.54 | 35% | $12,000.00 | $50.36 |
| Lot 58 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-058 | $12,500 | $4,400.22 | 35% | $6,000.00 | $20.98 |
| Lot 59 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-006 | $22,000 | $7,744.39 | 35% | $9,000.00 | $36.93 |
| Lot 60 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-005 | $19,000 | $6,688.34 | 35% | $8,000.00 | $31.89 |
| Lot 61 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-004 | $12,500 | $4,400.22 | 35% | $6,000.00 | $20.98 |
| Lot 62 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-003 | $15,000 | $5,280.27 | 35% | $7,000.00 | $25.18 |
| Undeveloped 18 Acre Ellijay, GA Parcel 3009-001G | $70,000 | $24,641.26 | 35% | $26,000.00 | $117.50 |
| Undeveloped 49 Acre Ellijay, GA Parcel 3009-001AB | $175,000 | $61,603.14 | 35% | $63,000.00 | $293.75 |
| **Total** | **$446,000** | **$157,000** | 35% | **$174,000** | **$748.64** |

### B. Class 16 – Progress Bank and Trust Release Agreement.

The following release schedule applies to the 22 properties collateralized by Progress Bank and Trust. This claim may be identified as Progress, Loan x-2700 elsewhere in the Debtor's Bankruptcy Proceedings.

Collateral for Class 16 produces net income under terms of this Plan. Debtor proposes the standard 10 year balloon, but reserves the right to liquidate properties using the release prices. The property located at 148 Bridletrace Lane, Madison, AL is currently listed for sale and will likely sell prior to confirmation of this Plan.

| Property Description | Market Value | Estimated Balance | Estimated LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| Lot Appurtenant to Home 198 Walker Ave Huntsville, AL, 35801 | $100,000 | $55,382.53 | 55% | $58,000 | $280.62 |
| 1 BR Rental Home 4973 Seven Pine Cr Huntsville, AL, 35816 | $39,000 | $21,599.19 | 55% | $23,000 | $109.44 |

| | | | | |
|---|---|---|---|---|
| 2 BR Rental Condo<br>4956 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Condo<br>4961 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Condo<br>4964 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Condo<br>4970 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Condo<br>4983 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Condo<br>4987 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Condo<br>5022 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Condo<br>5024 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 1 BR Rental Condo<br>5027 Seven Pine Cr<br>Huntsville, AL, 35816 | $39,000 | $21,599.19 | 55% | $23,000 | $109.44 |
| 2 BR Rental Condo<br>5035 Seven Pine Cr<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 1 BR Rental Condo<br>5131 Seven Pine Cr<br>Huntsville, AL, 35816 | $39,000 | $21,599.19 | 55% | $23,000 | $109.44 |
| 2 BR Rental Condo<br>6644-A Willow Pt<br>Huntsville, AL, 35816 | $59,000 | $32,675.69 | 55% | $34,000 | $165.56 |
| 3 BR Rental Home<br>1126 Oster Dr<br>Huntsville, AL, 35810 | $129,000 | $71,443.47 | 55% | $74,500 | $361.99 |
| 2 BR Rental Condo<br>5044 Seven Pine Cr **<br>Huntsville, AL, 35816 | $55,000 | $30,460.39 | 55% | $32,000 | $154.34 |
| 2 BR Rental Home<br>161 Stone Meadow<br>Madison AL, 35758 | $92,000 | $50,951.93 | 55% | $53,000 | $258.17 |

| | | | | |
|---|---|---|---|---|
| 2 BR Rental Home<br>102 Briargate Ln<br>Madison AL, 35758 | $120,000 | $66,459.04 | 55% | $69,500 | $336.74 |
| 2 BR Rental Home<br>107 Briargate Ln<br>Madison AL, 35758 | $110,000 | $60,920.79 | 55% | $63,500 | $308.68 |
| 3 BR Rental Home<br>129 Briargate Ln<br>Madison AL, 35758 | $110,000 | $60,920.79 | 55% | $63,500 | $308.68 |
| 2 BR Rental Home<br>1519 McKinley<br>Huntsville, AL, 35801 | $90,000 | $49,844.28 | 55% | $52,000 | $252.55 |
| 3 BR Vacant Home[aa]<br>148 Bridletrace Ln<br>Madison AL, 35758 | $125,000 | $107,500.00 | 86% | $107,500 | $544.69 |
| **Total** | **$1,602,000** | **$925,500.00** | 55% | **$964,500** | **$4,689.37** |

### C. Class 17 – Piedmont Capital Lending Release Agreement.

The following release schedule applies to the 11 properties collateralizing Claim No. 8-1 by Piedmont Capital Lending. This claim may be identified as Piedmont elsewhere in Debtor Bankruptcy Proceedings. Collateral for Class 17 produces net income under terms of this Plan. Debtor proposes the standard 10 year balloon, but reserves the right to liquidate properties using the release prices.

| Property Description | Market Value | Estimated Balance | Estimated LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| Lot 63 Lakeland Estates<br>Phase II Ellijay, GA<br>Parcel 3009B-002 | $22,000 | $6,940.28 | 32% | $8,000.00 | $35.17 |
| Lot 32 Lakeland Estates<br>Phase II Ellijay, GA<br>Parcel 3009B-021 | $18,000 | $5,678.41 | 32% | $7,000.00 | $28.77 |
| Lot 33 Lakeland Estates<br>Phase II Ellijay, GA<br>Parcel 3009B-022 | $18,000 | $5,678.41 | 32% | $7,000.00 | $28.77 |
| Lot 3 Lakeland Estates<br>Phase II Ellijay, GA<br>Parcel 3009B-051 | $35,000 | $11,041.35 | 32% | $13,000.00 | $55.94 |
| Lot 54 Lakeland Estates<br>Phase II Ellijay, GA<br>Parcel 3009B-054 | $15,000 | $4,732.01 | 32% | $6,000.00 | $23.98 |
| Lot 57 Lakeland Estates<br>Phase II Ellijay, GA<br>Parcel 3009B-057 | $30,000 | $9,464.01 | 32% | $11,000.00 | $47.95 |

Case 16-81412-CRJ11   Doc 230   Filed 11/15/16   Entered 11/15/16 15:00:57   Desc<br>Main Document       Page 17 of 34

| | Market Value | Estimated Balance | LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| Lot 49 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-059 | $35,000 | $11,041.35 | 32% | $13,000.00 | $55.94 |
| Lot 50 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-060 | $30,000 | $9,464.01 | 32% | $11,000.00 | $47.95 |
| Lot 52 Lakeland Estates Phase II Ellijay, GA Parcel 3009B-062 | $20,000 | $6,309.34 | 32% | $8,000.00 | $31.97 |
| 4 BR Rental Home 1013 Constitution Way Cumming, GA 30040 | $200,000 | $63,093.42 | 32% | $65,000.00 | $319.69 |
| 6 BR Rental Home 130 Whipporwill Dr Oxford, GA | $230,000 | $72,557.43 | 32% | $74,000.00 | $367.64 |
| **Total** | **$653,000** | **$206,000** | $0 | **$223,000** | **$1,043.77** |

**D.  Class 18 – Sevier County Bank Release Agreement.**

The following release schedule applies to the 10 properties collateralized by Sevier County Bank. These may be identified as Sevier County Loan x-7420 and Sevier County Loan x-7457 elsewhere in Debtor Bankruptcy Proceedings. Collateral for Class 18 produces net income that supports the Plan and pays Mr. Dombrowski's living expenses. Debtor proposes the standard 10 year balloon, but reserves the right to liquidate properties using the release prices.

| Property Description x-7420 | Market Value | Estimated Balance | Estimated LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| 1 BR Rental Home 3013 Legacy Vista Dr Sevierville, TN 37876 | $240,000 | $148,759.56 | 62% | $160,000 | $668.00 |
| 1 BR Rental Home 3015 Legacy Vista Dr Sevierville, TN 37876 | $240,000 | $148,759.56 | 62% | $160,000 | $668.00 |
| 1 BR Rental Home 2613 Mountain Glory Sevierville, TN 37876 | $240,000 | $148,759.56 | 62% | $160,000 | $668.00 |
| 5 BR Rental Home 314 Pinnacle Dr Gatlinburg, TN 37738 | $550,000 | $340,907.33 | 62% | $360,000 | $1,530.83 |
| **Total** | **$1,270,000** | **$787,186.02** | 62% | **$840,000** | **$3,534.82** |

| Property Description x-7457 | Market Value | Estimated Balance | Estimated LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| 1 BR Rental Home 2611 Mountain Glory Sevierville, TN 37876 | $240,000 | $134,938.33 | 56% | $140,000 | $605.93 |

| | | | | |
|---|---|---|---|---|
| 1 BR Rental Home 2617 Mountain Glory Sevierville, TN 37876 | $240,000 | $134,938.33 | 56% | $140,000 | $605.93 |
| 1 BR Rental Home 2322 Top of The World Sevierville, TN 37876 | $250,000 | $140,560.76 | 56% | $150,000 | $631.18 |
| 7 BR 3451 Tekoa Mountain Sevierville, TN 37876 | $650,000 | $365,457.98 | 56% | $375,000 | $1,641.07 |
| 3 BR Rental Home 410 Buena Vista Sevierville, TN 37876 | $360,000 | $202,407.50 | 56% | $210,000 | $908.90 |
| 7 BR Rental Home 218 Pinnacle Dr Gatlinburg, TN 37738 | $550,000 | $309,233.68 | 56% | $320,000 | $1,388.60 |
| **Total** | **$2,290,000** | **$1,287,536.59** | 56% | **$1,335,000** | **$5,781.61** |

### E. Class 19 – First Tennessee Bank Release Agreement.

The following release schedule applies to the 7 properties collateralizing Claim No. 16-1 by First Tennessee Bank. This claim may be identified as First Tennessee Bank or FTB loan elsewhere in Debtor's Bankruptcy Proceedings. Collateral for Class 19 produces significant net income that supports the Plan and pays Mr. Dombrowski's living expenses. Debtor proposes the standard 10 year balloon, but reserves the right to liquidate properties using the release prices.

| Property Description | Market Value | Estimated Balance | Estimated LTV | Release Price | Estimated Payment |
|---|---|---|---|---|---|
| 1 BR Rental Home 2402 Breezy Ridge Ln Sevierville, TN 37876 | $280,000 | $147,078.65 | 53% | $155,000 | $660.45 |
| 1 BR Rental Home 2048 Mikey Street Sevierville, TN 37876 | $320,000 | $168,089.89 | 53% | $175,000 | $754.80 |
| 1 BR Rental Home 3053 Legacy Vista Dr Sevierville, TN 37876 | $240,000 | $126,067.42 | 53% | $135,000 | $566.10 |
| 1 BR Rental Home 3047 Legacy Vista Dr Sevierville, TN 37876 | $240,000 | $126,067.42 | 53% | $135,000 | $566.10 |
| 1 BR Rental Home 2937 Legacy Vista Dr Sevierville, TN 37876 | $230,000 | $120,814.61 | 53% | $130,000 | $542.51 |
| 1 BR Rental Home 3049 Legacy Vista Dr Sevierville, TN 37876 | $240,000 | $126,067.42 | 53% | $135,000 | $566.10 |

Case 16-81412-CRJ11    Doc 230    Filed 11/15/16    Entered 11/15/16 15:00:57    Desc
Main Document        Page 19 of 34

| | | | | | |
|---|---|---|---|---|---|
| 1 BR Rental Home<br>3010 Legacy Vista Dr<br>Sevierville, TN 37876 | $230,000 | $120,814.61 | 53% | $130,000 | $542.51 |
| **Total** | **$1,780,000** | **$935,000.00** | **53%** | **$995,000** | **$4,198.57** |

### F. Class 20 – First Commercial Bank Release Agreement.

The following release schedule applies to the 51 properties (calculated by including individual subdivision lots) collateralizing Claim No. 10-1 by First Commercial Bank. This claim may be identified as First Commercial or Synovus x-8396 elsewhere in Debtor's bankruptcy proceedings. The Debtor's post-confirmation payment to this creditor will be the same as the pre-confirmation adequate protection payment ordered by the Bankruptcy Court, $995.00 per month, until the allowed claim is paid in full. The Debtor will liquidate collateral to satisfy Claim 10-1 within 24 months.

Creditor also claims a lien against 1013 Constitution Ave, Cumming, Georgia that is junior to Piedmont Capital Lending. 1013 Constitution's approximate market value (less typical closing costs) is less than Piedmont Capital Lending's current claim. Consequently, Creditor will release its second mortgage on this property when Debtor pays First Commercial Bank's allowed claim in full or after receiving remaining net proceeds from the sale of 1013 Constitution Ave, Cumming, Georgia.

| Property Description | Bank Value | Proportional Balance | Effective LTV | Release Price |
|---|---|---|---|---|
| Lot 1<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 2<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 3<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 4<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 5<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 6<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 7<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 8 | $6,034 | $4,439.98 | 74% | $5,000.00 |

20

| | | | | |
|---|---|---|---|---|
| Horseshoe Bend Dallas , Ga 30157 | | | | |
| Lot 9 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 10 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 11 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 12 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 13 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 14 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 15 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 16 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 17 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 18 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 19 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 20 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 21 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 22 Horseshoe Bend Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 23 Horseshoe Bend | $6,034 | $4,439.98 | 74% | $5,000.00 |

| | | | | |
|---|---|---|---|---|
| Dallas , Ga 30157 | | | | |
| Lot 24<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 25<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 26<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 27<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 28<br>Horseshoe Bend<br>Dallas , Ga 30157 | $6,034 | $4,439.98 | 74% | $5,000.00 |
| Lot 29<br>Horseshoe Bend<br>Dallas , Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 1<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 2<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 3<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 4<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 5<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 6<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 7<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 8<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 9<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |

| | | | | |
|---|---|---|---|---|
| Lot 10<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 11<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 12<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 13<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 14<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 15<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 16<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| Lot 17<br>Little Creek Manor<br>Dallas, Ga 30157 | $5,882 | $4,328.05 | 74% | $5,000.00 |
| 2 BR Condo<br>617 John Wesley Dobbs<br>Ave #B<br>Atlanta, Ga 30312 | $270,000 | $198,657.40 | 74% | $216,000.00 |
| 2BR Vacant Condo*<br>617 John Wesley Dobbs<br>Ave #A<br>Atlanta, Ga 30312 | $270,000 | $198,657.40 | 74% | $216,000.00 |
| 1 BR Rental Condo<br>57 Forsyth Unit 4c<br>Atlanta, Ga 30303 | $83,000 | $61,068.76 | 74% | $66,400.00 |
| Morgantown Beach Lot<br>Gulf Shores, AL | $517,000 | $380,392.13 | 74% | $413,600.00 |
| Junior Lien<br>1013 Constitution Way<br>Cumming, Ga 30040 | $0 | $0.00 | 0% | $N/A |
| **Total** | **$1,414,848** | **$1,041,000** | **74%** | **$1,142,000** |

**Class of Home Owner Association Liens Treated as Secured Claims: 21**

1. **Classification**

This Class consists of all pre-petition Home Owner Association liens on real property that either the Debtor already owns or the Plan proposes that the Debtor will receive ownership from the Debtor's various LLCs upon confirmation. A list of the Home Owner Association claims is attached as Exhibit "D".

### 2. Claimant Status

All claims in Class 21 are impaired and, accordingly, the holders of Allowed Claims in this Class are entitled to vote on the Plan.

### 3. Treatment

Beginning sixty (60) days after the Court approves the Plan, the Debtor will make a payment of $500.00 per month to the creditors in this Class (divided among the claimants in this Class) until one-hundred percent (100%) of each allowed claim in this Class, including interest, is paid in full.

In the case that the HOA is entitled to interest, the balance of each claim in this Class as of confirmation of this Plan shall be calculated using a proposed interest rate which is the lesser of the statutory rate or 4.50% per annum for the period from the petition Filing Date to the date of confirmation. Said interest rate shall accrue on such claims from the date of confirmation until they are paid by the Debtor.

**ARTICLE 5**
**AUTHORIZATION TO TRANSFER ASSETS**
**OF DEBTOR'S LIMITED LIABILITY COMPANIES**

### 1. Transfer of LLC Assets and Termination of LLCs.

At any time after the Bankruptcy Court enters an order confirming this Plan, the Debtor is authorized to take the following actions:

a. The Debtor may cause each of his sole-member limited liability companies (each being referred to individually in this section as " the LLC"), to call meetings, adopt resolutions and take such further steps as may be necessary to accomplish the further actions described below and to transact such other business as may be necessary to accomplish the said actions; and

b. The Debtor may cause the LLC to convey to the Debtor by quitclaim deed all of its right, title and interest in the real property subject to the mortgage lien and underlying debt of a secured creditor in this Chapter 11 case; and

c. The Debtor may cause the LLC to convey or assign to the Debtor all cash, receivables lists, forms, chattel property and any other physical assets associated with the conveyed real property by appropriate instruments acceptable to the Debtor; and

d.   The Debtor may cause the LLC to convey or assign to the Debtor all contracts, leases, licenses and any other intangible assets associated with the conveyed real property by appropriate instruments acceptable to the Debtor; and

e.   The Debtor may cause the LLC to file articles of termination or dissolution, or such other and further paperwork as the Debtor deems appropriate and necessary in accordance with the laws of the state in which the LLC was organized.

### 2.        Conveyances Subject to Existing Liens.

The LLC's conveyance of title to the Debtor shall be subject to any mortgage lien and/or statutory lien against the real property that existed at the Petition Date, except to the extent that such lien and/or the underlying debt is modified by this Plan or any order entered by the Bankruptcy Court in this case.

### 3.        Treatment of Incidences of Default or Breaches of Loan Contract.

Confirmation of this Plan shall void and render unenforceable any provision in the mortgage, the promissory note or the associated loan documents that identifies the LLC's conveyance of title to the Debtor or other action stated above as an incident of default or a breach of the loan agreement.

Any unresolved incident of default under the mortgage, promissory note or loan documents of any secured claim in this case that is not clearly stated in a filed proof of claim at least fourteen (14) days prior to the first hearing on the Debtor's Plan shall be deemed waived by the secured creditor and consequently unenforceable against the Debtor. However, such waiver shall not apply to any incident of default that may arise after confirmation of the Debtor's Plan, so long as said incident does not violate any terms of the confirmed Plan.

### 4.        Consequences of Conveyance of LLC Properties.

The LLC's conveyance of title of one or more real properties to the Debtor as authorized herein shall be complementary to and shall not modify or nullify the other provisions of this Plan. The conveyed real property titled in the Debtor's name shall be property of the Debtor's Chapter 11 Estate under 11 U.S.C. § 541 for the purposes of § 1141 and any other sections of the Bankruptcy Code that may be applicable to the implementation of this Plan.

### 5.        Option to Seek Tax Ruling.

The Debtor, in his sole discretion, may seek a written ruling from the Commissioner of Internal Revenue to the effect that this Plan will be a "reorganization" as that term is defined in the Internal Revenue Code, and that no gain or loss will be recognized either to the Debtor or his LLCs by the consummation of the actions herein described.

## ARTICLE 6
## COMPLETE RELEASE OF LIABILITY FOR
## DEBTOR'S SPOUSE EXCEPT WHERE RESERVED

Upon confirmation of this Plan, the Debtor's spouse, Charlotte Dombrowski, and her heirs, successors and personal representatives, shall be totally and permanently released from any and all manner of claims, actions, causes of action, debts, accounts, guaranties, loans, contracts, notes and demands from any and all of the Debtor's creditors and from any successors or assignees of said creditors, except as to any creditor for which the terms of the Plan expressly reserve and continue Charlotte Dombrowski's liability.

This complete and total release of liability for Charlotte Dombrowski shall include any late charges, attorney's fees and expenses, or other legal demands that might arise under any loan documents or by statute in connection with the claims of the debtor's creditors.

This complete and total release of liability for Charlotte Dombrowski shall include any claims for unjust enrichment, constructive trust, or other equitable demands that might arise under case law or by statute in connection with the claims of the Debtor's creditors.

This complete and total release of liability for Charlotte Dombrowski also shall include any claims for contribution or indemnity that might arise under any loan documents or by statute in connection with the claims of the Debtor's creditors.

The only exception to this complete and total release of liability for Charlotte Dombrowski is the homestead of the Debtor and Mrs. Dombrowski, for which Charlotte Dombrowski shall remain liable according to the terms of the purchase-money Fannie Mae note and mortgage, as such terms may be modified by the Debtor's confirmed Plan.

The Debtor intends that this release of Charlotte Dombrowski shall be complete and total in the same manner as the release of liability discussed in the reported decision of *Iberiabank v. Geisen (In re FFS Data, Inc.)*, 776 F.3d 1299 (11th Cir. 2015). All terms of this release shall be construed so as to be complete and total for Mrs. Dombrowski, as said terms were discussed and applied in this U.S. Court of Appeals decision.

## ARTICLE 7
## ACCEPTANCE OR REJECTION OF THE PLAN

7.1     The holders of Claims in all impaired Classes listed above shall be entitled to vote to accept or reject the Plan.

## ARTICLE 8
## MEANS FOR EXECUTION AND IMPLEMENTATION
## OF THE PLAN

8.1     Funding of the Distribution. On the Effective Date, the Debtor shall first fund payments to the holders of Allowed Administrative Claims.

26

8.2    Authorization to Take Necessary and Appropriate Actions to Effectuate Plan. On the Effective Date, the Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan and Disclosure Statement.

8.3    Preservation of Rights of Action. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce any claims, rights and causes of action that the Debtor or the Estates may hold against any entity, including, without limitation, any claims, rights or causes of action arising under Sections 544 through 551 or other sections of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory. The Debtor or any successor to or designee thereof may pursue those rights of action, as appropriate, in accordance with what is in the best interests of the Debtor.

8.4    Except as otherwise provided for with respect to applications of professionals for compensation and reimbursement of expenses under Article 3 of the Plan, or as otherwise ordered by the Bankruptcy Court after notice and a hearing, objections by any party other than the Debtor to filed Claims shall be Filed and served upon the holder of such Claim or Administrative Claim not later than the Effective Date, unless this period is extended by the Court. Such extension may occur ex parte. After the Effective Date, only the Debtor shall have the exclusive right to object to Claims.

**ARTICLE 9**
**FUNDING AND METHODS OF DISTRIBUTION AND**
**PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS**

9.1    Funding of Distributions under the Plan. The Debtor's normal cash flow shall be the sole source of funds for the payments to creditors.

9.2    Cash Distributions. All Cash distributions made pursuant to the Plan shall be made by the Debtor from the Chapter 11 estate. Any such payments may be made either by check or wire transfer, at the option of the payor.

9.3    Distribution Procedures. Except as otherwise provided in the Plan, all distributions of Cash and other property shall be made by the Debtor on the later of the Effective Date or the date on which such Claim is Allowed, or as soon thereafter as practicable. Distributions required to be made on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable. No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is allowed.

9.4    Distributions to Holders of Allowed Administrative Expense Claims. Commencing on the Effective Date, the Debtor shall, in accordance with Article 3 of the Plan, distribute to each holder of a then unpaid Allowed Administrative Expense Claim in the Allowed amount of such holder's Claim if and to the extent that the balance, if any, of such Claims is

Allowed by Final Order. The Debtor shall not tender a payment to the holders of Allowed Administrative Expense Claims until all Disputed Claims that are alleged to be Administrative Claims have been allowed or disallowed.

9.5     Disputed Claims. Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim.

9.6     Delivery of Distributions and Undeliverable or Unclaimed Distributions.

(a)     Delivery of Distributions in General. Distributions to holders of Allowed Claims shall be distributed by mail as follows: (1) at the addresses set forth on the respective proofs of claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (3) at the address reflected on the Schedule of Assets and Liabilities filed by the Debtor if no proof of claim or proof of interest is Filed and the Debtor have not received a written notice of a change of address.

(b)     Undeliverable Distributions.

(i) Holding and Investment of Undeliverable Property. If the distribution to the holder of any Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor is notified in writing of such holder's then current address. Unclaimed Cash shall be held in trust in a segregated bank account in the name of the Debtor, for the benefit of the potential claimants of such funds, and shall be accounted for separately.

(ii) Distribution of Undeliverable Property After it Becomes Deliverable and Failure to Claim Undeliverable Property. Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within two years after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan. In such cases, any cash or securities held for distribution on account of such Claims shall become property of the Debtor.

9.7     Failure to Negotiate Checks. Checks issued in respect of distributions to holders of Allowed Claims under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. The Debtor shall hold any amounts returned to the Debtor in respect of such checks. Requests for reissuance of any such check may be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such voided check is required to be made within six months of the original issuance date of the check. Thereafter, all amounts represented by any voided check shall become unrestricted funds of the Debtor. All Claims in respect of void checks and the underlying distributions shall be discharged and forever barred from an assertion against the Debtor and its property.

28

9.8    Compliance with Tax Requirements. In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

9.9    Setoffs. Unless otherwise provided in a Final Order or in this Plan, the Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor may have against the holder thereof or its predecessor, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims the Debtor may have against such holder or its predecessor.

## ARTICLE 10
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

10.1    Rejection of All Executory Contracts and Leases Not Assumed. The Plan constitutes and incorporates a motion by the Debtor to reject, as of the Effective Date, all pre-petition executory contracts and unexpired leases to which the Debtor are parties, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order, or (ii) is the subject of a pending motion for authority to assume the contract or lease Filed by the Debtor prior to the Confirmation Date. The Plan establishes a bar date for filing Rejection Claims not already barred.

10.2    Bar Date for Filing of Rejection Claims. Any Claim for damages arising from the rejection under this Plan of an executory contract or unexpired lease that was not subject to an earlier bar date must be Filed within thirty (30) days after the mailing of notice of Confirmation or be forever barred and unenforceable against the Debtor, the Estates, any of their affiliates and their properties and barred from receiving any distribution under this Plan.

## ARTICLE 11
## EFFECTS OF PLAN CONFIRMATION

11.1    No Liability for Solicitation or Participation. As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

11.2    Limitation of Liability. Neither the Debtor and any professional Persons retained by them; any of their affiliates nor any of their officers, directors, partners, associates, employees, members or agents (collectively the "Exculpated Persons"), shall have or incur any liability to any Person for any act taken or omission made in good faith in connection with or related to the Bankruptcy Case or actions taken therein, including negotiating, formulating,

29

implementing, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, or other agreement or document created in connection with the Plan. The Exculpated Persons shall have no liability to any Creditors or Equity Security Holders for actions taken under the Plan, in connection therewith or with respect thereto in good faith, including, without limitation, failure to obtain Confirmation of the Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons will not have or incur any liability to any holder of a Claim, holder of an Interest, or party-in-interest herein or any other Person for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as finally determined by the Bankruptcy Court, and in all respects such persons will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

11.3    Other Documents and Actions. The Debtor as Debtor-In-Possession may execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

11.4    Term of Injunctions or Stays. Unless otherwise provided, all injunctions or stays provided for in the Reorganization Case pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

## ARTICLE 12
## CONFIRMABILITY OF PLAN AND CRAMDOWN

The Debtor requests Confirmation under Section 1129(b) of the Bankruptcy Code if any impaired class does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code. In that event, the Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE 13
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Reorganization Case after the Effective Date as is legally permissible, including, without limitation, jurisdiction to:

13.1    Allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim or Indenture Trustee expenses and the resolution of any and all objections to the allowance or priority of Claims or Interests;

13.2    Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

Case 16-81412-CRJ11    Doc 230    Filed 11/15/16    Entered 11/15/16 15:00:57    Desc
Main Document      Page 30 of 34

13.3    Resolve any motions pending on the Effective Date to assume, assign or reject any executory contract or unexpired lease to which the Debtor are a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising there from;

13.4    Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

13.5    Decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

13.6    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

13.7    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan, including the provisions of Article 9 hereof;

13.8    Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court Order, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

13.9    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

13.10   Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

13.11   Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

13.12   Enter an order concluding the Reorganization Case.

If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Reorganization Case, including, without limitation, the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1    Fractional Dollars. Any other provision of the Plan notwithstanding, no payments of fractions of dollars will be made to any holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

14.2    Modification of Plan. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

14.3    Withdrawal of Plan. The Debtor reserves the right, at any time prior to entry of the Confirmation Order, to revoke or withdraw the Plan. If the Debtor revokes or withdraws the Plan under this Section 12.3 or if the Effective Date does not occur, then the Plan shall be deemed null and void.  In that event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

14.4    Governing Law. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Alabama, without giving effect to the principles of conflicts of law thereof.

14.5    Time. In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eight days, intermediate days that are not Business Days shall be excluded in the computation.

Case 16-81412-CRJ11    Doc 230    Filed 11/15/16    Entered 11/15/16 15:00:57    Desc
Main Document      Page 32 of 34

14.6    Payment Dates. Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day.

14.7    Headings. The headings used in this Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan.

14.8    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.9    Severability of Plan Provisions. If prior to Confirmation any term or provision of the Plan, which does not govern the treatment of Claims or Interests or the conditions of the Effective Date, is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.10   No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any Claims classification.

14.11   Notices. Notices to be provided under this Plan shall be transmitted to the Debtor as follows:

Michael G. Dombrowski
200 Walker Avenue
Huntsville, AL  35801

With a copy to:
Tazewell T. Shepard, Esq.
SPARKMAN, SHEPARD & MORRIS, PC
P.O. Box 19045
Huntsville, AL 35804

Case 16-81412-CRJ11    Doc 230    Filed 11/15/16    Entered 11/15/16 15:00:57    Desc
Main Document    Page 33 of 34

This _15th_ day of November, 2016.

_____
Michael G. Dombrowski, Chapter 11 Debtor


Of Counsel:

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
Fax: (256) 512-9837