## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In re: Michael G. Dombrowski, ) Case No.: 16-81412-CRJ-11
SSN: xxx-xx-4413 )
)
Debtor. ) CHAPTER 11

## JOINT MOTION FOR APPROVAL OF
## COMPROMISE AND SETTLEMENT

COME NOW Michael G. Dombrowski, as Chapter 11 Debtor-in-Possession ("Debtor"), and Progress Bank ("Bank"), and respectfully represent that they have reached an agreement to settle and compromise the claims and disputes involved in the Debtor's Chapter 11 case. As grounds for this motion, the parties state the following:

### I. Background

1. On May 11, 2016 (the "Commencement Date"), the Debtor commenced with this Court a voluntary case under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

2. The Debtor continues to be authorized to operate the business as Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtor is an active real estate investor with numerous real properties in Alabama and several other states. In addition to his own properties, the Debtor is a member or member/owner of several limited liability companies that own real properties.

4. On January 30, 2009, March 17, 2015, March 17, 2015, and on March 17, 2016, the Debtor contracted with Progress Bank, for four separate loans (loan ## 2700, 6700, 6800, and 2300, respectively) totaling $2,194,000.00 (the "loans").

5. As of filing its proofs of claim on September 9, 2016, the Bank asserted that the loans' remaining principal balance was a total of $1,435,330.90, plus forward accruing interest, and costs (the Proofs of Claim").

6. The Debtor is the sole owner and member of MCA Properties, L.L.C., an Alabama limited liability company ("MCA"), Old Towne Homes, L.L.C., an Alabama limited liability company ("Old Towne"), which together, along with the Debtor personally, currently hold title to the following properties encumbered by the Bank's purchase-money mortgages that collateralized the loans (the "collateral"), as listed and incorporated hereto in Exhibit "A."

7. Following the commencement date, a dispute arose between the Debtor and the Bank regarding the Debtor's treatment of the Bank's claim under the terms of his Plan for Reorganization (the "dispute").

8. To resolve the dispute and all other ancillary or collateral matters between these parties, the Debtor and the Bank propose this compromise and settlement to the Court. These parties aver that this proposed resolution is in the best interest of each party and the bankruptcy estate as a whole.

## II. Jurisdiction and Notice

9. The parties bring this Motion for approval of compromise and settlement (this "Motion") pursuant to § 105 of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). This Motion is a contested matter under Bankruptcy Rule 9014.

10. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). To the extent that this Court is being asked to enter a final order on any non-core matter, the parties expressly consent to the entry of a final order.

11. Pursuant to Bankruptcy Rule 2002, the parties propose to serve a copy of this Motion upon the Bankruptcy Administrator, all creditors, and all parties requesting notice.

12. Pursuant to Bankruptcy Rule 2002, the parties propose that the Bankruptcy Court provide no less than 20 days' notice by mail to all creditors of the time within which objections to the relief requested in this Motion must be filed and of the hearing on any such objections.

## III. Agreement for Compromise and Settlement

13. The agreement by and between the Debtor, including where applicable Old Towne and MCA, and the Bank to resolve all issues involved in the Chapter 11 case is as follows:

A. The Bank's Proofs of Claim may be satisfied by the payment in total (the "Settlement Claim"), as set forth below:

i. Loan #2300 will be modified as follows: the principal balance will be reduced to $18,000.00 with interest accruing at the rate of 5.0% per annum beginning on the March 20, 2017. This note will mature on March 20, 2019. Between March 20, 2017 and March 20, 2019, the Debtor will be obliged to make monthly interest-only payments to the Bank in the amount of $75.00 due on the 20th day of each month and late ten (10) calendar days thereafter. In addition, the remaining collateral property on loan #2300 and located at 503/505 O'Shaughnessy Huntsville, AL 35801 will be subject to a release price of

2

$18,000.00, as reflected in Ex. A., (the "release price") with the Chapter 11 Bankruptcy Estate retaining any net proceeds in excess of the release price after the sale of the collateral property. This collateral property must be sold, or the remaining balance otherwise paid in full, on or before the maturity date set forth above.

ii.     Loan #6700 will be modified as follows: the principal balance will be reduced to $225,000.00 with interest accruing at the rate of 5.0% per annum beginning on the March 20, 2017. This note will mature on March 20, 2019. Between March 20, 2017 and March 20, 2019, the Debtor will be obliged to make monthly interest-only payments to the Bank in the amount of $937.50 due on the 20th day of each month and late ten (10) calendar days thereafter. In addition, the remaining collateral property on loan #6700 and located at 405 Eustis Ave. Huntsville, AL 35801 will be subject to a release price of $225,000.00, as reflected in Ex. A., (the "release price") with the Chapter 11 Bankruptcy Estate retaining any net proceeds in excess of the release price after the sale of the collateral property. This collateral property must be sold, or the remaining balance otherwise paid in full, on or before the maturity date set forth above.

iii.    Loan #6800 will be modified as follows: the principal balance will be reduced to $70,000.00 with interest accruing at the rate of 5.0% per annum beginning on the March 20, 2017. This note will mature on March 20, 2019. Between March 20, 2017 and March 20, 2019, the Debtor will be obliged to make monthly interest-only payments to the Bank in the amount of $291.67 due on the 20th day of each month and late ten (10) calendar days thereafter. In addition, the remaining collateral property on loan #6800 and located at 1200 Highland Ave. Huntsville, AL 35801 will be subject to a release price of $70,000.00, as reflected in Ex. A., (the "release price") with the Chapter 11 Bankruptcy Estate retaining any net proceeds in excess of the release price after the sale of the collateral property. This collateral property must be sold, or the remaining balance otherwise paid in full, on or before the maturity date set forth above.

iv.     Loan #2700 will be modified as follows: the principal balance will be increased to $1,098,060.00 (the "principal balance") to account for the principal balance reductions on loan ## 2300, 6700, and 6800. Interest on loan #2700 will accrue at the rate of 4.5% per annum beginning on the March 20, 2017. This note will mature on March 20, 2024. Between March 20, 2017 and March 20, 2024, the Debtor will be obliged to make monthly payments on a thirty-year (30) amortization schedule to the Bank, initially in the amount of $5,563.70, due on the 20th day of each month and late ten (10) calendar days thereafter. Further, the Debtor agrees to pay down and/or liquidate collateral properties to reduce the principal balance on this note on the schedule that follows:

3

| | |
|---|---|
| March 20, 2018 | $941,000.00 |
| March 20, 2019 | $784,000.00 |
| March 20, 2020 | $627,000.00 |
| March 20, 2021 | $470,000.00 |
| March 20, 2022 | $313,000.00 |
| March 20, 2023 | $156,000.00 |
| March 20, 2024 | $0.00 |

The remaining collateral properties on loan #6800 and reflected in Ex A. will be subject to the release prices in Ex. A., (the "release prices") with the Chapter 11 Bankruptcy Estate retaining any net proceeds in excess of the release prices after the sale of any individual collateral property. Following the sale of any collateral property, the Debtor's monthly payment pursuant to this loan will be reduced for all future payments to account for the sold property. This payment reduction will be calculated as follows: the parties will subtract the monthly "loan payment" listed in Ex. A for the corresponding collateral property sold from the current payment on this note. The Debtor's payments will continue to reduce as properties are sold until either (a) the principal balance is paid in full; or (b) the Debtor defaults under the terms of this agreement.

B.   The Bank will release its mortgages on the respective collateral properties provided the release prices are achieved.

C.   The Debtor will have the exclusive right to market and sell, subject to the Bank's approval of any such sale, any of the collateral properties.

D.   With regard to any parcel of collateral property that is not sold or under contract by the maturity dates specified in Paragraph 13(A) above, or if the principal reductions set forth in Paragraph 13(A)(iv) are not otherwise met, Debtor and the Bank agree and stipulate that the Automatic Stay, pursuant to 11 USC § 363 (the "Automatic Stay"), shall be lifted, or modified, with regard to any deficiency balance in order to permit Bank to foreclose on collateral property in accordance with state law to satisfy any such deficiency without any further Hearings, or Order of the Court.  In such event, Debtor will reasonably cooperate with the Bank if it chooses to pursue any other remedies that the Bank may have to recover possession of the property.

E.   Debtor will incorporate the terms of this agreement into his Plan of Reorganization, and the Bank will support this treatment of its claim in the Debtor's Plan and not vote against and withdraw it pending objection to said Plan.

F.   The Debtor will be responsible for any Bank attorney's fees incurred following the approval of this agreement only in the event that he defaults on this agreement or if there is a default under the plan with regard to the treatment of the Bank's claim.

G.   If the Bank concludes that the Debtor is in default under his plan, or concerning the payments to the Bank, the Bank will send notice of such default to Debtor at his last known

4

residence and a copy to his bankruptcy counsel of record. Thereafter, the Debtor will have twenty-one (21) calendar days to cure the default from the date the notice is sent.

H. Upon filing of this Motion, the Debtor is released from any further obligation to make his Court ordered adequate protection payments to Bank.

I. For the pendency of this agreement, Debtor will maintain real estate insurance policies covering all of the collateral properties in an amount of at least the release prices listed in Ex. A in order to adequately protect Bank's secured interest in the collateral properties.

J. Until either: (a) the Bank's claims are paid in paid in full; or (b) the Debtor defaults under the terms of this agreement, the Debtor will timely pay any and all future assessed property taxes related to any of the collateral properties.

K. The Debtor further agrees to allow the Bank reasonable access to inspect and/or appraise any of the collateral properties following a written request for inspection from the Bank.

## IV. Business Justification for Compromise and Settlement

14. Bankruptcy Rule 9019(a) authorizes a bankruptcy court to approve compromises and settlements. The approval or rejection of a compromise is left to the sound discretion of the bankruptcy court, and is to be determined by the particular circumstances of each proposed compromise. The term "sound discretion" denotes the absence of a hard-and-fast rule. When invoked as a guide to judicial action, it means a decision giving due regard to what is right and equitable under the particular circumstances of the case and applicable law. Langes v. Green, 282 U.S. 531, 541 (1931).

15. The courts have supplied the following criteria when determining the acceptability of a proposed compromise:

(i) The probability of success in the litigation;
(ii) The complexity of the litigation involved; and
(iii) The expense, inconvenience, and delay necessarily attending the litigation (including the possibility that denial of the settlement will cause the depletion of assets).

Wallis v. Justice Oaks, II, Ltd. (In re Justice Oaks II, Ltd.), 898 F.2d 1544 (11th Cir. 1990) and In re Jackson Brewing Co., 624 F.2d 605, 607 (5th Cir. 1980). See also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968). The court is required to decide whether the settlement falls below the lowest point in a range of reasonableness. Anacona-Ericsson v. Hennson (In re Teletronics Services, Inc.), 762 F.2d 185, 187-89 (2d Cir. 1985) (quoting Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert denied 464 U.S. 822 (1984)).

16. Although the parties each believe strongly in their respective claims and defenses, each also recognizes the risks inherent in any litigation.

17. A settlement of the parties' disputes in accordance with this Motion will result in the resolution of these claims and minimize the Estate's administrative costs.

18. The proposed compromise and settlement is consistent with the intent and the requirements of the Bankruptcy Code.

19. This settlement and compromise is proposed in good faith and is the product of arms-length negotiations that have occurred between the parties over an extended period of time.

## V. Conclusion

WHEREFORE, PREMISES CONSIDERED, the parties request that the Bankruptcy Court:

A. Enter a final order approving this compromise and settlement; authorizing the parties to execute and deliver any and all other documents which may be necessary or appropriate to effectuate the compromise and settlement described herein; and

B. Granting such further and different relief as the Bankruptcy Court may deem just and appropriate.

Respectfully submitted this the 22nd day of March, 2017.

| | |
|---|---|
| */s/ Chad W. Ayres* | */s/ Tazewell T. Shepard III* |
| Chad W. Ayres | Tazewell T. Shepard III |
| *Attorney for Progress Bank* | *An Attorney for Debtor-in-possession* |
| | |
| **WILMER AND LEE, P.A.** | **SPARKMAN, SHEPARD & MORRIS, P.C.** |
| 100 Washington Street | P.O. Box 19045 |
| Suite 100 | Huntsville, AL 35804 |
| Birmingham, AL 35203 | Tel: (256) 512-9924 |
| Tel: (205) 458-5457 | Fax: (256) 512-9837 |
| Fax: (205) 244-5637 | |

## CERTIFICATE OF SERVICE

This is to certify that I have this 22nd day of March, 2017 served the foregoing motion on all parties as listed on the Clerk's Certified Matrix and Richard Blythe, Office of the Bankruptcy Administrator, P.O. Box 3045, Decatur, AL 35602 by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

*/s/ Tazewell T. Shepard III*
Tazewell T. Shepard III

| Loan x-2700 | Release Price | Loan Payment |
|---|---|---|
| Lot Appertenant to Home 198 Walker Ave Huntsville, AL, 35801 | $98,400 | $498.58 |
| Rental Home 4956 Seven Pine Cr Huntsville, AL, 35816 | $32,800 | $166.19 |
| Rental Home 4961 Seven Pine Cr Huntsville, AL, 35816 | $32,800 | $166.19 |
| Rental Home 4964 Seven Pine Cr Huntsville, AL, 35816 | $36,900 | $186.97 |
| Rental Home 4970 Seven Pine Cr Huntsville, AL, 35816 | $36,900 | $186.97 |
| Rental Home 4973 Seven Pine Cr Huntsville, AL, 35816 | $24,600 | $124.64 |
| Rental Home 4983 Seven Pine Cr Huntsville, AL, 35816 | $32,800 | $166.19 |
| Rental Home 4987 Seven Pine Cr Huntsville, AL, 35816 | $36,900 | $186.97 |
| Rental Home 5022 Seven Pine Cr Huntsville, AL, 35816 | $32,800 | $166.19 |
| Rental Home 5024 Seven Pine Cr Huntsville, AL, 35816 | $36,080 | $182.81 |
| Rental Home 5027 Seven Pine Cr Huntsville, AL, 35816 | $23,780 | $120.49 |
| Rental Home 5035 Seven Pine Cr Huntsville, AL, 35816 | $36,080 | $182.81 |
| Rental Home 5044 Seven Pine Cr Huntsville, AL, 35816 | $0 | $0.00 |
| Rental Home 5131 Seven Pine Cr Huntsville, AL, 35816 | $23,780 | $120.49 |
| Rental Home 6644-A Willow Pt Huntsville, AL, 35816 | $36,900 | $186.97 |
| Rental Home 161 Stone Meadow Madison AL, 35758 | $73,800 | $373.93 |
| Rental Home 102 Briargate Ln Madison AL, 35758 | $94,300 | $477.80 |

| | Release Price | Payment |
|---|---|---|
| Rental Home 107 Briargate Ln Madison AL, 35758 | $86,100 | $436.26 |
| Rental Home 129 Briargate Ln Madison AL, 35758 | $83,640 | $423.79 |
| Rental Home 1126 Oster Dr Huntsville, AL, 35810 | $73,800 | $373.93 |
| Rental Home 1519 McKinley Huntsville, AL, 35801 | $57,400 | $290.84 |
| Rental Home 148 Bridletrace Ln Madison AL, 35758 | $107,500 | $544.69 |
| **Totals Loan x-2700** | **$1,098,060** | **$5,563.70** |

| **Loan x-2300** | *Release Price* | *Payment* |
|---|---|---|
| Vacant Home 503/505 Oshaghnessey Huntsville, AL, 35801 | $18,000 | $75.00 |

| **Loan x-6700** | *Release Price* | *Payment* |
|---|---|---|
| Vacant Home 405 Eustis Huntsville, AL, 35801 | $225,000 | $937.50 |

| **Loan x-6800** | *Release Price* | *Payment* |
|---|---|---|
| Vacant Home 1200 Highlands Huntsville, AL, 35801 | $70,000 | $291.67 |

| **All Loans** | *Release Price* | *Payment* |
|---|---|---|
| **Totals - All Progress Loans** | **$1,411,060** | **$6,868** |