## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## DECATUR DIVISION

| | | |
|---|---|---|
| IN RE | : | |
| | : | |
| MICHAEL G. DOMBROWSKI, | : | Case No. 16-81412-CRJ11 |
| | : | Chapter 11 |
| DEBTOR. | : | Judge CLIFTON R. JESSUP JR. |

------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| U.S. BANK TRUST NATIONAL | : | |
| ASSOCIATION AS TRUSTEE | : | |
| OF CHALET SERIES III TRUST | : | |
| MOVANT, | : | CONTESTED MATTER |
| | : | |
| V. | : | |
| | : | |
| MICHAEL G. DOMBROWSKI, | : | |
| | : | |
| DEBTOR, | : | |
| | : | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C § 362(a), OR IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION

COMES NOW **U.S. Bank Trust National Association as Trustee of Chalet Series III Trust** ("Movant"), by and through its attorneys, and moves this Court for an order of relief from the stay provided imposed by 11 U.S.C. Section 362 or in the alternative its request for adequate protection. In support thereof, Movant states as follows:

1.      Debtor filed the above-styled case under the provisions of Chapter 11, Title 11, United States Bankruptcy Code on May 11, 2016.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334, as referred under 28 U.S.C. Section 157, and it constitutes a "core proceeding" within the meaning of the latter statute. This Motion is made pursuant to Bankruptcy Rule 4001(a) and 9014.

3.      Movant holds a mortgage on the real property commonly known as 2564 Navarra Dr. #

115, Carlsbad, CA 92009-7070 and more particularly described in the Mortgage referred to below (the "Property").

4.      Said Mortgage secures a Note in favor of Bank of America, N.A.  in the original principal amount of $161,130.00 dated November 20, 2012 (the "Note"), a copy of which is attached as **Exhibit A**.

5.      The Property is subject to a first lien of Bank of America, N.A. by the Mortgage recorded in San Diego County, California, a copy of which is attached as **Exhibit B** (the "Mortgage").

6.      The Note and Mortgage were later transferred to Movant and Movant is the current holder of the Note and Mortgage.

7.      In the event the automatic stay is modified, this case dismisses and/or the Debtor receives a discharge and a foreclosure action is commenced on the property, the foreclosure will be conducted in the name of U.S. Bank Trust National Association as Trustee of Chalet Series III Trust, or its assignee.

8.      The approximate payoff, exclusive of legal fees and expenses incurred in the connection with the instant motion, due and owed to Movant as of September 30, 2019 is $165,151.44 comprised of an Unpaid Principal Balance of $155,264.95, Interest of $8,256.69, Other fees of $375.02, force-placed insurance premium(s) of $1,523.18 and Other fees of $337.46 and Suspense Balance                                                                                          $268.40.

9.      According to Debtor's Schedules, the value of the Property is $250,000.00.

10.     Pursuant to the terms of the plan confirmed August 30, 2017 (Doc. 569), Movant's claim was impaired and treated in Class 33-1 of the plan. Upon confirmation of the plan, the terms of the Note were modified in accordance with the treatment of the plan. Accordingly, effective October 1, 2017, the modified Unpaid Principal Balance became $157,332.56; the modified

interest rate became 4.00%; the modified term of monthly payments was extended to 360; and the modified monthly payment of principal and interest became $751.13.

11.     Debtor has defaulted in payment of the monthly mortgage payments and is due for the months of July 1, 2018 through September 1, 2019, a total of fifteen(15) payments in the amount of $751.13 each ($11,268.95); Debtor has a suspense balance of $268.40. The total amount in default is $12,896.75.

12.     Pursuant to the confirmed plan, "[i]f the Creditor concludes that the Debtor is in default under his plan, or concerning the payments to the Creditor, the Creditor will send notice of such default to Debtor at his last known residence and a copy to his bankruptcy counsel of record. Thereafter, the Debtor will have twenty-on (21) calendar days to cure the default from the date this notice is sent."

13.     Upon Debtor's default, Movant sent Notice to Debtor as contemplated by the confirmed plan, a copy of which is attached as **Exhibit C** (the "Notice of Default").

14.     Debtor disputes the Notice of Default.

15.     The Debtor's action has caused unreasonable delay that is prejudicial to Movant. Further, Movant is not adequately protected.

16.     Movant wishes to protect its interests and proceed with taking possession of the Property.

17.     Movant has incurred additional expense in order to collect this post-petition Debtor in the form of attorneys' fees and costs, and requests that this Court award Movant reasonable attorneys' fees and court costs associated with this matter.

### WAIVER OF FED. R. BANKR. P. 4001(a)(3)

18.     This is a chapter 11 bankruptcy case in which the Debtor knows, should know, or has been informed by Debtor's counsel of the rules of this Bankruptcy Court and the potential

penalties for non-compliance. Therefore, Movant requests that this Court waive the fourteen day stay in accordance with Bankruptcy Rule 4001(a)(3).

**ATTORNEY FEES**

19.     Movant has had to incur additional expense in order to collect this post-petition debt in the form of attorney fees and costs and requests the Court to award Movant reasonable attorney fees and court costs associated with this matter.

WHEREFORE, Movant respectfully requests that this Court grant the following relief:

Enter an Order terminating or modifying the Automatic Stay imposed by 11 U.S.C. §362(a) to allow Movant to institute and complete a foreclosure of the Property under its loan documents and in accordance with applicable law;

a.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code;

b.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived;

c.      That Movant be exempted from further compliance with Fed. R. Bankr. P. 3002.1 in the instant bankruptcy case;

d.      In the alternative, and in the event the Court determines that the automatic stay should remain in full force and effect, enter an Order for adequate protection of Movant's interest in the Property and to provide that the rights of Movant, pursuant to 11 U.S.C. §506(b), be fully protected;

e.      In the alternative, and in the event the Court determines that the automatic stay should remain in full force and effect, enter an Order for adequate protection of Movant's interest in the Property at the contractual payment amount of $1,133.78 per month, pending confirmation.

f.      Award Movant its reasonable attorneys' fees and expenses associated with this

Motion, and the Trustee is hereby authorized to modify the plan as necessary to

accommodate this claim; and

g.      For such other relief as the Court deems proper.

This the 20th day of September, 2019.

Respectfully submitted,

/s/ Mark A. Baker
Mark A. Baker, ASB 2549-E57M
Attorneys for Movant
MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Atlanta, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: mbaker@mtglaw.com

## CERTIFICATE OF SERVICE

I, MARK A. BAKER, ESQUIRE, certify that I am and at all times hereinafter mentioned was more than 18 years of age, that on September 20, 2019, I served a copy of the within Motion for Relief from Stay filed in this bankruptcy matter on the respondent(s) in this matter by FIRST CLASS MAIL and ELECTRONIC SERVICE the said respondent(s) at:

**SERVICE LIST**

**VIA U.S. MAIL**
Michael G. Dombrowski
200 Walker Avenue
Huntsville, AL 35801

20 Largest Creditors
*See attached Matrix*

**VIA CM/ECF**
Tazewell Shepard, P.C.
PO BOX 19045
Huntsville, AL 35804

Tazewwell T. Shepard
Tazewell Shepard, Trustee
PO BOX 19045
Huntsville, AL 35804

Tazewell Taylor Shepard, IV
Sparkman, Shepard & Morris, P.C.
P.O. Box 19045
Huntsville, AL 35804

I certify under penalty of perjury that the foregoing is true and correct.

Executed on: <u>September 20, 2019</u>          <u>s/ Mark A. Baker</u>
                                                Mark A. Baker, Esquire

MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive
Suite 260
Peachtree Corners, GA 30092

American Express CustomerA
Service
P O Box 81535
El Paso, TX 79998-1535

*Cobblestone Condo Assn
P O Box 22116
Huntsville, AL 35814-2116

*Cornerstone
2060 Mt Paran Rd Ste 100
Atlanta, GA 30327-2935

*First Tennessee
c/o Jeanna McWilliams
511 Union St 5th Fl
Nashville, TN 37219-1736

*Fulton County Tax Commissioner
141 Pryor St
Atlanta, GA 30303-3446

*Gilmer County Tax Commissioner
1 Broad St Ste 105
Ellijay, GA 30540-9045

*Legacy Mountain HOA
P O Box 10686
Knoxville, TN 37939-0686

*Lynda Hall Tax Collector
Madison County Courthouse
100 Northside Sq
Huntsville, AL 35801-4876

*Philip G. Dombrowski
14007 Astalot Dr
Huntsville, AL 35803-2465

*Piedmont Lending
c/o Chandler Doughty
P O Box 1578
Roswell, GA 30077-1578

*Progress Bank and Trust
201 Williams Ave
Huntsville, AL 35801-4308

*Progress Bank and Trust
c/o Clint Kirkland
201 Williams Ave
Huntsville, AL 35801-4308

*Sevier County Bank
P O Box 5288
Sevierville, TN 37864-5288

*Sevier County Bank
c/o Jack Williams
P O Box 5288
Sevierville, TN 37864-5288

*Sevier County Trustee
125 Court Ave Rm 212W
Sevierville, TN 37862-3596

*Synovus
Managed Assets
P O Box 105233
Atlanta, GA 30348-5233

*Synovus
c/o Jeff Spielberger
P O Box 105233
Atlanta, GA 30348-5233

*USAA Federal Savings Bank
10750 McDermott Freeway
San Antonio, TX 78288-9876

*United Community Bank
558 Industrial Blvd
Ellijay, GA 30540-3786

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### DECATUR DIVISION

IN RE                     :

                           :

**MICHAEL G. DOMBROWSKI,**    :    **Case No. 16-81412-CRJ11**

                           :    **Chapter 11**

           **DEBTOR.**       :    **Judge CLIFTON R. JESSUP JR.**

-------------------------------------------------------------------------------------------------------------

**U.S. BANK TRUST NATIONAL**     :

**ASSOCIATION AS TRUSTEE**      :

**OF CHALET SERIES III TRUST**   :

         **MOVANT,**      :    **CONTESTED MATTER**

                           :

**V.**                           :

                           :

**MICHAEL G. DOMBROWSKI,**    :

                           :

           **DEBTOR,**       :

                           :

## AFFIDAVIT IN SUPPORT OF MOTION
### FOR RELIEF FROM AUTOMATIC STAY

STATE OF California )

COUNTY OF Humboldt )

Megan Lynch, who after being duly sworn, deposes and says the following:

1.    I am over the age of 18 years and am authorized to make this affidavit on behalf of

SN Servicing Corporation, as loan servicer for U.S. Bank Trust National Association as Trustee

of Chalet Series III Trust.

2.    I am presently a Bankruptcy Asset Manager for SN Servicing Corporation, as loan servicer for U.S.

Bank Trust National Association as Trustee of Chalet Series III Trust. In this position, I have

access to the business records of SN Servicing Corporation, as loan servicer for U.S. Bank Trust

National Association as Trustee of Chalet Series III Trust and my responsibilities include

ascertaining and verifying amounts due and payable as to delinquent bankruptcy accounts.

3.    The facts states in this affidavit are based upon information that I obtained by reviewing records maintained in the ordinary course of SN Servicing Corporation, as loan servicer for U.S. Bank Trust National Association as Trustee of Chalet Series III Trust's business, as part of regularly conducted business activity, by or from information transmitted by person(s) with knowledge of the events described therein, at or near the time of the event described.

4.    SN Servicing Corporation acquired servicing rights to the loan obligation on behalf of U.S. Bank Trust National Association as Trustee of Chalet Series III Trust on or about April 11, 2017.

5.    The Debtor, Michael G. Dombrowski executed a note dated November 20, 2012, in favor of Bank of America, N.A. in the original principal sum of $161,130.00 (the "Note").

6.    Movant is in possession of the original promissory note.

7.    The Note is secured by a Mortgage encumbering certain real property at 2564 Navarra Dr. # 115, Carlsbad, CA 92009-7070.

8.    The total balance due on this loan as of September 30, 2019 is $165,151.44 comprised of an Unpaid Principal Balance of $155,264.95, Interest of $8,256.69, Other fees of $375.02, force-placed insurance premium(s) of $1,523.18 and Other fees of $337.46 and Suspense Balance $268.40.

9.    Interest accrues at the rate of 4.00% per year.

10.   Pursuant to the confirmed plan of reorganization, on or about April 25, 2019, Movant reconciled the terms of the modified loan to conform them to the confirmed plan as follows:

Plan Class 33-1 2564 Navarra Drive Carlsbad, CA 92009
Loan Balance of $157,332.56 as of 09/09/2016
Note re-amortized upon confirmation of the Debtor's Plan on a 30-year Payment Schedule at a
    Fixed Interest Rate of 4.00% per annum.
The Plan Confirmed on 09/05/2017 – New Terms / Payment Due: 10/01/2017
New UPB of $157,332.56 @ 4.00% / 360 Term-P&I of $751.13

11.   The Debtor has failed to make any monthly payments for the months of July 1, 2018

through September 1, 2019. The total arrearage due as of September 16, 2019 is $12,896.75, which sum is comprised of fifteen (15) monthly payments in the amount of $751.13 each ($11,268.95), less unapplied funds of $268.40. Payments continue to accrue at the rate of $751.13 per month beginning October 1, 2019.

12.     The sums set forth in this affidavit do not include any escrow advances, attorneys' fees, costs, or other fees and charges that might otherwise be included in the event that a payoff is requested or provided.

I declare that, to the best of my knowledge, and after reasonable inquiry, the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT.

BY: _____

Affiant

Name: Megan M. Lynch

Title: Bankruptcy Asset Manager

Company: SN Servicing Corporation

Date: 09/18/2019

STATE OF _____

COUNTY OF _____

Sworn to and subscribed before me this _____ day of _____, 20____

_____

NOTARY

My Commission expires:

*[Stamp: A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. California all purpose acknowledgement. Please see the attached California notarial certificate. Thank you.]*

# CALIFORNIA JURAT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of ___Humboldt___ )

Subscribed and sworn to (or affirmed) before me on this __18th__ day

of ___September___, 20 _19_, by __Megan Lynch___

_____ ,

proved to me on the basis of satisfactory evidence to be the person(s)
who appeared before me.

MACHELLE L. TRUBY
COMM. #2283750
NOTARY PUBLIC • CALIFORNIA
HUMBOLDT COUNTY
My Comm. Expires May 24, 2023

(Seal)

Signature _Machelle L. Truby_

Machelle L. Truby, Notary Public
My Comm. Exp. May 24, 2023

# Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this jurat to an unauthorized document and may prove useful to persons relying on the attached document.

### Description of Attached Document

This certificate is attached to a document titled/for the purpose of

containing _____ pages, and dated _____ .

Method of Affiant Identification

Proved to me on the basis of satisfactory evidence:
◉ form(s) of identification   ○ credible witness(es)

Notarial event is detailed in notary journal on:
Page # _5 3_ Entry # _3_

Notary contact: __707-476-2618__

Other

☒ Affiant(s) Thumbprint(s)  ☒ Describe: _____

Driver's License

© Copyright 2007-2018 Notary Rotary, PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved.   Item Number 101884.  Please contact your Authorized Reseller to purchase copies of this form.

# EXHIBIT A

# NOTE

NOVEMBER 20, 2012
[Date]

[City]

CALIFORNIA
[State]

2564 NAVARRA DR #115, CARLSBAD, CA 92009-7070
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $161,130.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
BANK OF AMERICA, N.A.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on JANUARY 01, 2013 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 01, 2042 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 515503, Los Angeles, CA 90051-6803
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $769.26

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

Fixed Rate Note
2005N-XX (05/11)(d/i)

Page 1 of 3

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200  1/01
Fixed Rate Note
2005N-XX (05/11)          Page 2 of 3

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL G. DOMBROWSKI                   -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY_____
        DONALD W WHALEY
     ASSISTANT VICE PRESIDENT

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200  1/01

Fixed Rate Note
2005N-XX (05/11)                              Page 3  of 3

# EXHIBIT B

Recording Requested By:
D   User

After Recording R

Recording Requested By & Return To:
Chicago Title ServiceLink Division
4000 Industrial Blvd
Aliquippa, PA 15001

Prepared By:
JENNIFER ANNE GONZALEZ

**DOC #   2012-0765478**

**DEC 06, 2012       8:00 AM**
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:              78.00
                                    DA:           1
8477                    **PAGES:      21**

——————————— [Space Above This Line For Recording Data] ———————



# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   NOVEMBER 20, 2012     , together with all Riders to this document.

**(B) "Borrower"** is

MICHAEL G DOMBROWSKI, A MARRIED MAND AS HIS SOLE AND SEPERATE PROPERTY



Borrower's address is
200 WALKER AVE NE, HUNTSVILLE, AL 35801
Borrower is the trustor under this Security Instrument.

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                          Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)(d/i)                              Page 1 of 13



**(C) "Lender" is**
BANK OF AMERICA, N.A.
Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
Lender's address is
101 South Tryon Street, Charlotte, NC 28255
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee" is**
ReconTrust Company, N.A.
MSN TO-02225 West Hillcrest Drive, Thousand Oaks, CA 91360
**(E) "Note"** means the promissory note signed by Borrower and dated  NOVEMBER 20, 2012        . The Note
states that Borrower owes Lender
ONE HUNDRED SIXTY ONE THOUSAND ONE HUNDRED THIRTY and 00/100

Dollars (U.S. $ 161,130.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   DECEMBER 01, 2042        .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the
Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Adjustable Rate Rider | ☒ | Condominium Rider | ☐ | Second Home Rider |
| ☐ | Balloon Rider | ☐ | Planned Unit Development Rider | ☒ | 1-4 Family Rider |
| ☐ | VA Rider | ☐ | Biweekly Payment Rider | ☐ | Other(s) [specify] |

**(I)   "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(J)   "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)   "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not
limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers,
and automated clearinghouse transfers.
**(L)   "Escrow Items"** means those items that are described in Section 3.
**(M)   "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third
party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,
the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation;
or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)   "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)   "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.
**(P)   "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

Case 16-81412-CRJ11   Doc 751   Filed 09/20/19   Entered 09/20/19 14:42:52   Desc
Main Document      Page 18 of 38

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | SAN DIEGO | : |

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 2162002315          which currently has the address of

2564 NAVARRA DR #115, CARLSBAD

[Street/City]

California 92009-7070    ("Property Address"):

[Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

     **1.**    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

     Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        **Form 3005 1/01**

Deed of Trust-CA
1006--CA (06/09)        Page 3 of 13

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document     Page 19 of 38

against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document    Page 20 of 38



Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.     Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.     Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)                                      Page 5 of 13

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document        Page 21 of 38

to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document        Page 22 of 38



If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due,

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                    Page 7 of 13

with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including,

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document        Page 24 of 38

but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                           Form 3005  1/01

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document       Page 25 of 38

attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document      Page 26 of 38

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

Case 16-81412-CRJ11    Doc 751    Filed 09/20/19    Entered 09/20/19 14:42:52    Desc
Main Document      Page 27 of 38



**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MICHAEL G. DOMBROWSKI                              -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                          Page 12 of 13

State of ~~California~~ ALABAMA

County of ___MADISON___

On _11/20/2012_ before me, ___JACK TEMPLETON___ NOTARY PUBLIC
personally appeared _____
_____MICHAEL. G. DOMBROWSKI_____

who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

~~I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.~~ JT

WITNESS my hand and official seal.

Signature _JackTempleton_ (Seal)
MY Commission EXPIRES : 08/22/2015

**LEGAL DESCRIPTION**



**EXHIBIT "A"**

ALL THAT PARCEL OF LAND IN SAN DIEGO COUNTY, STATE OF CALIFORNIA, AS DESCRIBED IN DEED INST # 2008-0344522, ID# 216-200-23-15, BEING KNOWN AND DESIGNATED AS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED 1/34TH INTEREST IN AND TO LOT 1 OF CARLSBAD TRACT 73-32 EL CALEDON, IN THE CITY OF CARLSBAD, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO.7993, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY ON JULY 31, 1974.

EXCEPTING THERE FROM THE FOLLOWING:

A- ALL UNITS AS SHOWN UPON THE CONDOMINIUM PLAN OF EL CALEDON RECORDED ON NOVEMBER 27, 1974 AS FILE/PAGE NO. 74-312651 OF OFFICIAL RECORDS OF SAN DIEGO COUNTY.

B- THE EXCLUSIVE RIGHT TO POSSESSION OF ALL THOSE AREAS DESIGNATED AS BALCONIES AND SHOWN UPON THE CONDOMINIUM PLAN ABOVE REFERRED TO.

PARCEL 2:

UNIT 115 AS SHOWN UPON THE CONDOMINIUM PLAN ABOVE REFERRED TO.

PARCEL 3:

THE EXCLUSIVE RIGHT TO POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF LOT 1 DESCRIBED IN PARCEL 1 ABOVE, DESIGNATED AS B 115 AND SHOWN UPON THE ABOVE REFERRED TO PLAN WHICH ARE APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

MORE COMMONLY·KNOWN AS: 2564 NAVARRA DRIVE UNIT 115, CARLSBAD, CA 92009


JUL 23, 2014    2:24 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:        21.00
DA:        1
**PAGES:**        2

Recording Requested By:
**Bank of America**
Prepared By: Ralph Flores
101 S. Marengo Ave.
Pasadena, CA 91101
800-444-4302

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Property Address:
2564 Navarra Dr #115
Carlsbad, CA 92009-7070

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is **14221 DALLAS PARKWAY, STE 1000, DALLAS, TX 75254** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary:               **BANK OF AMERICA, N.A.**
Original Borrower(s):      **MICHAEL G DOMBROWSKI, A MARRIED MAND AS HIS SOLE AND SEPERATE PROPERTY**
Original Trustee:          **RECONTRUST COMPANY, N.A.**
Date of Deed of Trust:     **11/20/2012**
Original Loan Amount:      **$161,130.00**

Recorded in San Diego County, CA on: 12/6/2012, book N/A, page 8477 and instrument number 2012-0765478

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
7/10/14

BANK OF AMERICA, N.A.

By: _____
        Lisa Nix
        Assistant Vice President

State of California
County of Ventura

On ___JUL 1 0 2014___ before me, _____**Shannon M. Mayfield**_____, Notary Public, personally appeared
_____**Lisa Nix**_____, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____**Shannon M. Mayfield**_____ (Seal)
My Commission Expires: _____**Jan 5, 2017**

SHANNON M. MAYFIELD
Commission # 2002964
Notary Public - California
Los Angeles County
My Comm. Expires Jan 5, 2017

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

DOC# 2019-0059387

Feb 20, 2019 09:53 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $92.00 (SB2 Atkins: $75.00)

PAGES: 1

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 5600 GRANITE PKWY., BUILDING VII, PLANO, TX 75024, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to MTGLQ INVESTORS, L.P., WHOSE ADDRESS IS 2001 ROSS AVENUE, DALLAS, TX 75201 (212)902-1000, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by MICHAEL G. DOMBROWSKI and recorded on 12/06/2012 as Doc # 2012-0765478 in the office of the SAN DIEGO County Recorder, CA.

Dated on ___2 / 13 /2019 (MM/DD/YYYY)
FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact



By: _____
    Ercilia Green
    VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

### ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___2 / 13 /2019 (MM/DD/YYYY), by Ercilia Green as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Julie Martens GG221059
Notary Public - State of FLORIDA
Commission expires: 05/22/2022

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires: May 22, 2022
Bonded Through National Notary Assn.

Document Prepared By: Dave LaRose/NTC. 2100 Alt. 19 North. Palm Harbor. FL 34683 (800)346-9152

May 13, 2019  08:00 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $95.00   (SB2 Atkins: $75.00)

PAGES: 2

Recording Requested by Simplifile

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 11/20/2012
Original Loan Amount: **$161,130.00**
Executed by (Borrower(s)): **MICHAEL G DOMBROWSKI**
Original Trustee: **RECONTRUST COMPANY, N.A.**
Original Beneficiary: **BANK OF AMERICA, N.A.**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: **2012-0765478** in the Recording District of **SAN DIEGO, CA**, Recorded on **12/6/2012**.

Property more commonly described as: **2564 NAVARRA DR #115, CARLSBAD, CALIFORNIA 92009-7070**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ FEB 2 2 2019 _____

**MTGLQ INVESTORS, L.P.**

By: **ERIN JEMISON**
Title: **VICE PRESIDENT**

Witness Name: _____ **Allen Herrington** _____

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **TEXAS**
County of    **DALLAS**

On _____ FEB 2 2 2019 _____, before me, JENNIFER LYNNE CARY , a Notary Public, personally appeared **ERIN JEMISON, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify ERIN JEMISON, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____
JENNIFER LYNNE CARY
(Notary Name): _____
My commission expires: _____ NOV 2 0 2022 _____

Jennifer Lynne Cary
My Commission Expires
11/20/2022
ID No. 130032409

# EXHIBIT C



# McMichael Taylor Gray, LLC

3550 Engineering Drive|Suite 260|Peachtree Corners, GA 30092
Office: 404-474-7149|Fax: 404-745-8121

May 21, 2019

Michael G. Dombrowski
200 Walker Avenue
Huntsville, AL 35801

Tazewell Shepard
Tazewell Shepard, P.C.
Sparkman, Shepard & Morris, P.C.
PO Box 19045
Huntsville, AL 35804

RE:    **Michael G. Dombrowski**, Chapter 11 Case No. **16-81412-CRJ11**
        Subject Property:    2564 Navarra Drive, Unit 115, Carlsbad, CA 92009
        **NOTICE OF DEFAULT UNDER ORDER CONFIRMING DEBTOR'S CHAPTER
            11 PLAN OF REORGANIZATION ENTERED September 5, 2017**
        **DATE OF ISSUANCE OF NOTICE:**    May 21, 2019

Dear Mr. Dombrowski and Mr. Shepard:

We represent U.S. BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET
SERIES III TRUST successor in interest to FEDERAL NATIONAL MORTGAGE
ASSOCIATION ("Creditor"). Please be advised that the Debtor is in default under the terms of
the **ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**
entered **September 5, 2017** (the "Order"), in that the Debtor has failed to make the post-petition
payments required under the Order for the months of July 1, 2018, through March 1, 2019, a
total of **$8,837.50**, comprised as follows: eleven (11) payments of $751.13 each ($8,262.43), late
charges in the amount of $150.24, taxes/PMI/insurance in the amount of $744.38, less unapplied
funds of $318.95, and less interest on escrow in the amount of $0.60. A copy of the Order is
attached for your information.

Pursuant to the Order, you have twenty-one (21) days from the date of this Notice by which to
cure the default by payment of **$8,837.50**. If you fail to cure the default within the time provided,
the automatic stay provided by 11 U.S.C. Section 362(a) will be deemed lifted without further
Order from the Court, and Creditor shall thereafter shall be free to enforce any and all of its

respective rights, title and interest in and to the aforementioned property, including, but not limited to, foreclosure, in accordance with the provisions of the note and mortgage and the laws of the State of Alabama.

      GOVERN YOURSELF ACCORDINGLY.

Very truly yours,
/s/ Mark A. Baker_____
Mark A. Baker

MAB/wp
Enclosure